REESE *v.* LAMORE.

PARTITION—ACCOUNTING—EVIDENCE.

On a bill for the partition between the heirs of a husband and wife of property held by them, and by the wife after the death of the husband, evidence examined, and *held*, that complainant was not indebted to the estates, requiring an accounting.

Appeal from Berrien; Coolidge, J. Submitted January 21, 1909. (Docket No. 73.) Decided March 30, 1909.

Bill by Josephine Reese against Gilbert N. Lamore and others for the partition of certain real estate. From a decree for complainant, defendants appeal. Affirmed.

*W. C. Hicks*, for complainant.

*James O'Hara*, for defendants.

MONTGOMERY, J. The bill of complaint is filed for the partition of lands belonging to Louis Lamore, deceased, in his lifetime, and of other lands acquired by Sarah Lamore after the decease of her husband, Louis Lamore. The complainant and defendants are the sole heirs of these parties. Louis Lamore died testate, bequeathing the use of his real estate and control of all of his personal estate to his wife, Sarah Lamore, and certain specific legacies. The bill alleges an effort to secure a partition of the lands by negotiation, and refusal of defendants to consent. The answer admits the joint ownership of the lands, and states that they are desirous of having a partition and division of the premises, and are also desirous of having an accounting with the complainant for personal property belonging to the estate of Louis Lamore and Sarah Lamore, and allege that complainant is indebted to

the estate for moneys and property intrusted to her by the mother in the sum of $20,000, and have asked that the complainant be required to account, under the direction of the court, for all she ought to account for concerning her indebtedness to said estates. The circuit judge was of the opinion that the defense had failed to make out that any sums of money had come to the hands of the complainant for which she should account, and entered a decree for partition. From this decree, defendants appeal.

Louis Lamore died on the 24th of January, 1899. His wife, Sarah Lamore, was appointed executrix, and took possession of the real estate and personal property, and continued to manage the same and dispose of it as she would her own, and none of the heirs seem to have made any question about her authority in this regard. She lived until the 6th of October, 1906, dying at the age of 83 years. She retained her mental faculties during all this time, and transacted the business in part personally and partly with the assistance of the complainant, Josephine Reese, and her husband, Reuben W. Reese. It is open to question as to whether the absolute power of disposition of the personal estate was vested in Sarah Lamore by the terms of the will; but no such question as this is raised in the answer or briefs of counsel, the sole claim being that moneys have come to the hands of the complainant for which she should account. The method by which this is sought to be established is to take the estate left by Louis Lamore, credit what is on hand, and show the fact that complainant and her husband lived in the family of Mrs. Lamore, and had much to do with the transaction of the business in collecting moneys due on notes and mortgages, coupled with the attempt to show that Mrs. Lamore had in her own right a considerable sum of money, which is not accounted for. The inference is sought to be drawn that this money must have found its way into the hands of the complainant and her husband.

As to the claim that Mrs. Lamore had a large amount

of money of her own, we do not find it supported by the testimony. Undoubtedly, as between herself and her husband, some of the notes and mortgages were regarded as her own, and there is testimony that there was $2,600 in money in the house at the time of Louis Lamore's death, which he on his deathbed directed his widow to take to make good a mortgage which he had taken in his own name for money which he had loaned belonging to her. Aside from this sum, there is no tangible evidence of any funds belonging to Mrs. Lamore, no showing of mortgages or notes or lands in her own name prior to the death of Mr. Lamore. There is some testimony as to statements that she claimed to have a certain amount of property. If such a claim was ever made, it must have referred to notes and mortgages which were in the name of her husband, and which were inventoried as part of his estate. The estate of Louis Lamore at his decease inventoried at $43,428.99. Of this there was a specific legacy of a house and lot to the complainant, which was inventoried at $1,400, leaving $42,028.99. There was paid in funeral expenses, attorney's fees, etc., $4,776.80. When Mrs. Lamore died, her estate consisted of the original land, which came to her possession under the will of Louis Lamore, amounting to $11,080; 157 acres of land which was obtained on foreclosure of mortgage given by one Farmer, $5,495; 320 acres of Oscoda land and a lot in Eau Claire, $800—making $17,375 in real estate. Upon the appointment of the administrator de bonis non of the estate of Louis Lamore, there came into his hands $1,053.48. There was in Mrs. Lamore's personal estate $18,716.47, making a total of $37,144.95, or almost identically the net amount of Louis Lamore's estate after deducting expenses of administration, etc.

It is in evidence that in the meantime Mrs. Lamore had given to a granddaughter, Mrs. Hicks, the equivalent of $1,400, by discharging a mortgage upon a property owned by her husband upon condition that the husband would deed the property to his wife, the granddaughter,

which was done. She also gave to each of the children $1,525, or a total of $7,625. She rebated from the Farmer mortgage $500, and from the mortgage of one Rextrew $300. If from this be deducted the $2,600 not inventoried, it would show an increment of $7,225 over and above living expenses. In addition to this, it is in evidence that various other gifts were made to the grandchildren of Mrs. Lamore in her lifetime. She also was under considerable unusual expense for a portion of this time. She made numerous visits to Detroit, taking with her one of her grandchildren for company, and bearing the expenses. She was for a considerable period of time under a physician's care, and had the attendance of a nurse. Under these circumstances, we think the evidence not only wholly fails to show that the complainants have received large sums of money, or any sum of money, from Mrs. Lamore, not accounted for, but that the estate has been on the whole fairly well husbanded.

The decree of the circuit court will be affirmed, with costs, and the case remanded for partition under the statute.

BLAIR, C. J., and GRANT, MOORE, and McALVAY, JJ., concurred.